## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

EURO-PRO OPERATING LLC,
180 Wells Avenue, Suite 200
Newton, Massachusetts 02459,

       Plaintiff,

  v.

DYSON INC.,
600 West Chicago Avenue, Suite 275
Chicago, Illinois 60654,

      Defendant.

Civil Action No.  14-13720


**JURY TRIAL DEMANDED**

## VERIFIED COMPLAINT FOR
## FALSE ADVERTISING AND DECEPTIVE TRADE PRACTICES

Plaintiff Euro-Pro Operating LLC ("Euro-Pro"), by and through its undersigned

attorneys, for its Verified Complaint against Defendant Dyson Inc. ("Dyson"), states as follows:

### NATURE OF ACTION

1.      Euro-Pro and Dyson manufacture, market, and distribute vacuum products for

household use.  In late 2013, Dyson launched a multi-million dollar national advertising

campaign to promote its Dyson Animal series of vacuums.  As part of that campaign, Dyson has

made and continues to make claims portraying the suction performance of its Dyson Animal

vacuum products as twice that of any other competing vacuum, including Euro-Pro's products.

Dyson's "Twice the Suction" claims contain small-print disclosures telling consumers that

Dyson's claims are proven by purported testing against the "upright market to ASTM F558 at

cleaner head, dust-loaded as per IEC 60312-1" and "compared to top-performing product for

each brand," including specifically the "Shark Navigator Lift Away."

2.      Euro-Pro recently introduced its newest vacuum product called the Shark®
Rotator® Powered Lift-Away® Upright (Model Nos. NV650/651) (hereafter, "Shark Powered
Lift-Away"), which has top-performing suction performance that renders Dyson's "Twice the
Suction" claims literally false and misleading.  To establish this fact, Euro-Pro has
commissioned third-party independent laboratory testing, conducted pursuant to the referenced
ASTM F558 standard, which proves that the Shark Powered Lift-Away has suction that is
greater than or approximately equal to that of the advertised Dyson Animal vacuums, and in all
events, well within the margin necessary to render Dyson's "Twice the Suction" claim literally
false.

3.      Euro-Pro first notified Dyson in May 2014, that Euro-Pro's impending launch of
the Shark Powered Lift-Away would render Dyson's "Twice the Suction" advertising false and
misleading.  Euro-Pro again contacted Dyson in July 2014, this time to inform it that Euro-Pro
had now launched its new Shark Powered Lift-Away, and that testing on that product, pursuant
to ASTM F558, showed that Dyson's "Twice the Suction" claim was literally false.  According
to Euro-Pro's records, Dyson subsequently purchased three Shark Powered Lift-Away vacuum
units directly from Euro-Pro on July 11, 2014, thereby giving Dyson over two months to conduct
its own testing on Euro-Pro's new product.  Recently, Euro-Pro even provided Dyson with
copies of its own third-party independent testing proving unequivocally that the Dyson Animal
does not have "Twice the Suction" of the Shark Powered Lift-Away.  Despite these courtesies by
Euro-Pro, Dyson still has failed and refuses to remove its literally false point-of-sale advertising
and retail packaging from the marketplace within a reasonable timeframe, mostly likely in order
to benefit from the upcoming holiday shopping season.

4.      Dyson's intentionally false and misleading advertising, which claims that testing establishes the Dyson Animal's superior suction performance compared to Euro-Pro's Shark product line, is harmful to Euro-Pro and consumers alike.  Dyson's deceptive comparative advertising threatens Euro-Pro with lost sales, loss of goodwill, lost market share, and irreparable harm in the marketplace.  At the same time, Dyson's false and misleading claims are already causing (and unless enjoined will likely continue to cause) consumer confusion regarding the performance and efficacy of Dyson's products as compared to those of Euro-Pro.

**PARTIES**

5.      Plaintiff Euro-Pro is a corporation duly organized and existing under the laws of the State of Delaware, with its principal place of business located at 180 Wells Avenue, Suite 200, Newton, Massachusetts 02459.  Euro-Pro is a leading innovator in the vacuum and steam cleaning product industry.  For decades it has developed and manufactured a variety of consumer home appliances, including vacuum cleaners, steam mops, handheld steam cleaners, irons, blenders, and other kitchen small appliances.

6.      Upon information and belief, Defendant Dyson is a corporation duly organized and existing under the laws of the State of Illinois, with its principal place of business located at 600 West Chicago Avenue, Suite 275, Chicago, Illinois 60654.  Dyson is an affiliate of the Dyson group of companies based in the United Kingdom (collectively, "Dyson Companies").  The Dyson Companies design, manufacture, market, and sell various home appliance products, including upright, canister, and handheld vacuum cleaners.  Dyson sells these vacuum products throughout the United States and in the Commonwealth of Massachusetts.

**JURISDICTION AND VENUE**

7.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, in that Count One, for false advertising, arises under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).  Counts Two and Three, for deceptive trade practices and false advertising under Massachusetts statutory law, are so related to the preceding claims for relief that they form part of the same case or controversy, thereby giving this Court supplemental jurisdiction over this related state law claim under 28 U.S.C. § 1367(a).  Alternatively, this Court has subject matter jurisdiction over all claims in this matter pursuant to 28 U.S.C. § 1332(a), in that this is a civil action between citizens of different States where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

8.      This Court has personal jurisdiction over Dyson pursuant to Mass. Gen. Laws ch. 223A, § 3 and because, upon information and belief: Dyson regularly transacts and solicits business from customers residing in the Commonwealth of Massachusetts, including by way of the false and misleading advertisements at issue in this action; Dyson has caused tortious injury in the Commonwealth of Massachusetts through the false and misleading advertisements at issue in this action; and Dyson regularly derives substantial revenue from the sale of its products to retailers located in the Commonwealth of Massachusetts and directly to persons residing in the Commonwealth of Massachusetts via retail stores and the Internet.

9.      Venue is proper in this judicial district, pursuant to 28 U.S.C. § 1391(b) and (c), in that, upon information and belief, Dyson is subject to personal jurisdiction in this judicial district and therefore resides in this judicial district; Dyson's unlawful conduct has injured Euro-Pro within this judicial district; Dyson conducts business in this judicial district; and a substantial part of the events or omissions giving rise to the claims herein occurred in this judicial district.

## FACTS COMMON TO ALL CLAIMS

10.    Vacuum cleaners are one of the most common household appliances in the United States.  Countless American homes contain at least one vacuum cleaner product, and the United States vacuum cleaner industry annually generates billions of dollars in revenue.

11.    Vacuum cleaners vary in design, size, and shape depending on the consumer's cleaning needs and floor surfaces.  One of the most popular household vacuum cleaner designs is the upright vacuum.  Upright vacuums usually consist of a handle extending up from a main vacuum unit attached to a cleaning head that glides above the floor surface.  Upright vacuums typically employ a brush agitator to loosen dust and dirt from carpets, and a system to create a partial vacuum that lifts the loosened debris into a dust-bag or canister for later disposal.  Some upright vacuums also contain a detachable cleaning nozzle, connected via a hose to the main vacuum unit, for vacuuming hard-to-reach areas and narrow spaces.

I.    **Euro-Pro Shark Rotator.**

12.    Euro-Pro is a leading manufacturer and marketer of upright bag-less vacuum cleaners.  Among other vacuum products, Euro-Pro has developed and marketed a line of upright bag-less vacuum cleaners known as the Shark Rotator.

13.    The Shark Rotator line consists of lightweight upright vacuums featuring enhanced swivel steering, noise-minimizing technology, and anti-allergen sealing.  The Shark Rotator line includes the aforementioned Shark Powered Lift-Away, which Euro-Pro launched on July 8, 2014.  In terms of suction performance, the Shark Powered Lift-Away is the top-performing Shark product on the market today.  Unlike other Shark models, the Shark Powered Lift-Away comes equipped with a powered cleaning head, which contains a motorized brush that allows users to deep clean surfaces even when using the vacuum in portable, lift-away mode.

14.     In addition to the Shark Powered Lift-Away, the Shark Rotator line also includes the Shark® Rotator® Professional Lift-Away® (Model Nos. NV500/501/502/503); the Shark® Rotator® Professional (Model No. NV450); the Shark® Rotator® Professional with XL Reach (Model Nos. NV 400/401/402); and the Shark® Rotator® Vac or Steam™ (Model No. MV3010) (individually referred to by name, all Shark Rotator models collectively referred to as "Shark Rotator").

15.     Euro-Pro sells the Shark Rotator and other vacuum products both to retail outlets and directly to consumers via the Internet.  Euro-Pro advertises these vacuum products through national television and print advertising campaigns, as well as through in-store collateral, product packaging, and Internet advertising.  As a result of Euro-Pro's advertising efforts, Euro-Pro vacuum products, including the Shark Rotator, have attained widespread consumer awareness and approval, and Euro-Pro's SHARK trademark has become a household name.  The success of Euro-Pro's innovative product designs makes it a regular target for its competitors' advertising product comparisons.  In Fall 2013, Euro-Pro's Shark brand replaced Dyson as the top-selling brand of upright vacuums in the United States.

## II.     Dyson Animal.

16.     Dyson manufactures, markets, and distributes various upright bag-less vacuum products, including the Dyson Animal series, which currently includes the following products: (1) the Dyson DC41 Animal ("Dyson DC41 Animal") (Model No. 20280-01) and the Dyson DC41 Animal Complete ("Dyson DC41 Animal Complete") (Model No. 26028-01) (both together, the "Dyson DC41"); and (2) the Dyson DC65 Animal ("Dyson DC65 Animal") (Model No. 205472-01), the Dyson DC65 Animal Complete ("Dyson DC65 Animal Complete") (Model No. 205473-01), and the Dyson DC65 Multi Floor ("Dyson DC65 Multi Floor") (Model No.

205497-01) (all three together, the "Dyson DC65") (Dyson DC41 and Dyson DC65 referred to collectively as "Dyson Animal").

17.     Upon information and belief, the Dyson DC41 Animal and the Dyson DC41 Animal Complete consist of the same vacuum unit but are sold with different accompanying product accessories.  Likewise, upon further information and belief, the Dyson DC65 Animal, Dyson DC65 Animal Complete, and Dyson DC65 Multi Floor also consist of the same vacuum unit but come with different accessories.  As a result, the Dyson DC41 models and the Dyson DC65 models, respectively, render the same suction performance.

18.     The Dyson Animal is similar in class to and competes directly with the Shark Rotator.  Dyson markets the Dyson Animal to the same consumers who are actual or potential purchasers of the Shark Rotator.

**III.    Dyson's National Advertising Campaign for the Dyson Animal.**

19.     Since Euro-Pro launched the Shark Powered Lift-Away on July 8, 2014, Dyson has disseminated Internet and point-of-purchase advertising touting various claimed attributes of the Dyson Animal, including that the Dyson Animal has "Twice the Suction of Any Other Vacuum":

**A.      Internet.**

20.     Although Dyson modified its website advertising on September 9, 2014, the Dyson website previously contained numerous claims regarding the suction performance of the Dyson Animal *vis-à-vis* the Shark Rotator and/or "other vacuum[s]" since Euro-Pro launched the Shark Powered Lift-Away.

21.     Regarding the Dyson DC41, Dyson's website still contains the following non-exclusive list of claims:

a.  "The Dyson DC41 has twice the suction of any other vacuum*" with a small

disclosure reading "*Suction tested against upright market to ASTM F558 at

cleaner head, dust-loaded as per IEC 60312-1."  Also containing a bar graph

that directly compares the air wattage of the Dyson DC41 to that of the

"Shark" with another barely legibly disclosure reading "**Graph reflects

DC41 Animal compared to top-performing product for each brand (Shark

Navigator Lift away . . .)."  The bar graph also claims that the DC41 generates

160 air watts.  At the bottom of the webpage, Dyson again claims "It has the

strongest suction at the cleaner head" with respect to both the DC41 Animal

and the DC41 Animal Complete.  *See* Dyson, "Relentless Invention,"

http://www.dyson.com/vacuums/relentless.asp (last visited Sept. 26, 2014).

b.  The same webpage also contains an embedded video in which Alex Knox,

Dyson's Director of Engineering, states that a vacuum's power to clean

carpets depends on its brush roll and its suction.  He proceeds to explain how

a vacuum's brush roll agitates the dirt so the suction can pull it out of the

carpet.  He then misleadingly compares the suction power of the Dyson DC41

directly to the Shark Rotator Professional Lift-Away and directs the viewer to

readouts of two manometer devices purportedly showing pressure readings

(not suction power) of the Dyson product (160 air watts) and the Shark

product (43 air watts).  He states: "[Y]ou can see when you compare the

suction of the Dyson machine there's a huge difference."  A small disclosure

reads: "Figure on manometer device shows pressure reading, a key factor used

to calculate suction."  The screen cuts to black with white lettering claiming

"Dyson: Twice the suction of any other vacuum."  *See* Dyson, "Relentless Invention," http://www.dyson.com/vacuums/relentless.asp (last visited Sept. 26, 2014).

22. Regarding the Dyson DC65, until September 9, 2014, Dyson's website contained the following non-exclusive list of claims:

    a. "Twice the Suction" and "Suction power is measured in air watts.  Dyson DC65 has twice the suction of any other vacuum.‡" Also containing an embedded chart depicting the head-to-head air wattage comparison of the Dyson DC65 to the "Shark." A small disclosure at the bottom of the webpage reads, "‡Suction tested against upright market to ASTM F558 at cleaner head, dust-loaded as per IEC 60312-1.  Graph reflects DC65 compared to top-performing product for each brand (Shark Navigator Lift Away . . .)." *See* Dyson, "DC65," http://www.dyson.com/vacuum-cleaners/upright/dc65.aspx (as of Sept. 7, 2014).

    b. "The DC65 Animal has been built to achieve the highest suction at the cleaner head, twice the suction as any other vacuum.‡"  A small disclosure at the bottom of the webpage reads, "‡Suction tested against upright market to ASTM F558 at cleaner head, dust-loaded as per IEC 60312-1.  Graph reflects DC65 compared to top-performing product for each brand (Shark Navigator Lift Away . . .)." *See* Dyson, "DC65 Animal," http://www.dyson.com/vacuums/uprights/dc65/dc65-animal.aspx (as of Sept. 7, 2014).

c.   "The DC65 has been built to achieve the highest suction at the cleaner head, twice the suction of any other vacuum.‡"  Also listing "Twice the suction of any other vacuum*" under "DC65 Multi Floor features."  A small disclosure at the bottom of the webpage reads, "‡Suction tested against upright market to ASTM F558 at cleaner head, dust-loaded as per IEC 60312-1.  Graph reflects DC65 compared to top-performing product for each brand (Shark Navigator Lift Away . . .)."  *See* Dyson, "DC65 Multi Floor," http://www.dyson.com/vacuums/uprights/dc65/dc65-multi-floor.aspx (as of Sept. 7, 2014).

**B.     Product Packaging/Point-of-Purchase.**

23.     Dyson continues to heavily promote its "Twice the Suction" claim on product packaging, in-store product displays, and other in-store collateral for the Dyson DC65.  Following is a non-exclusive list of examples:

24.     <u>Product Packaging</u>. The Dyson DC65 Animal and the DC65 Multi Floor are both sold in product packaging containing full-side panel advertisements claiming "Twice the Suction of Any Other Vacuum*" with small disclosures stating "*Suction tested against upright market to ASTM F558 at cleaner head, dust-loaded as per IEC 60312-1.  Graph reflects DC65 compared to top-performing product for each brand (Shark Navigator Lift Away . . .)":



25.   <u>In-Store Product Displays</u>. The Dyson DC65 Animal and the DC65 Multi Floor are both sold alongside in-store product displays claiming "Twice the suction of any other vacuum*" across the front of the products, and disclosing in small print that "*Suction tested against upright market to ASTM F558 at cleaner head, dust-loaded as per IEC 60312-1":



26.   <u>In-Store Collateral Advertising</u>. The Dyson DC65 Animal and the DC65 Multi

Floor are both sold alongside in-store collateral advertising claiming "Twice the Suction of any

other vacuum*" with small disclosures stating "*Suction tested against upright market to ASTM

F558 at cleaner head, dust-loaded as per IEC 60312-1":



**IV.**     <u>Dyson's "Twice the Suction" Claims Are Material and Literally False</u>.

    **A.**     **Dyson's "Twice the Suction" Claims are Literally False Direct Comparative Superiority Claims and Establishment Claims.**

        (i)     <u>Dyson's "Twice the Suction" Claim is a Literally False Direct Comparative Superiority Claim Because the Dyson Animal Does Not Have "Twice the Suction" of the Shark Powered Lift-Away</u>.

27.     Dyson's claim that the Dyson Animal has "Twice the Suction of Any Other Vacuum" is a direct comparative superiority claim because it represents that the Dyson Animal is superior to the "top-performing product for each brand," including specifically the Shark brand, by having "Twice the Suction."  Therefore, to prove literal falsity, Euro-Pro must affirmatively show that the Dyson Animal does not have "Twice the Suction" of the top-performing Shark product, which is currently the Shark Powered Lift-Away.

28.     The Dyson Animal does not have "Twice the Suction" of the Shark Powered Lift-Away, as proven by independent third-party laboratory suction testing, commissioned by Euro-Pro and conducted by Intertek Laboratories ("Intertek"), pursuant to Dyson's claimed test method, ASTM F558.

29.     ASTM F558, entitled "Standard Test Method for Measuring Air Performance Characteristics of Vacuum Cleaners," is a protocol for measuring a vacuum cleaner's maximum air power.  Suction is one variable of air power and is measured in terms of "air watts."  Under ASTM F558, suction may be measured at one of two places on the vacuum cleaner: at the vacuum nozzle ("Cleaner Head") or at the end of the vacuum's hose (if present).

30.     The most common, industry-accepted method of performing ASTM F558 suction testing is at the end of the vacuum's hose because that method yields the most accurate test results. While there are a variety of vacuum Cleaner Heads, vacuum hoses are generally

standard, removing a great deal of the variability associated with measuring suction from various Cleaner Head designs.

31.     Measuring at the vacuum's Cleaner Head is not as accurate as measuring at the vacuum's hose because the results vary greatly based upon the type of floor surface for which the Cleaner Head is optimized.  For example, if a consumer were to use a vacuum on bare floors, the consumer might like a vacuum with very high suction in order to remove dirt and debris from the floor surface.  However, if the same consumer were to use the high suction vacuum on a high pile carpet (*e.g.*, shag), the vacuum would be very difficult to push and pull because the suction would form a complete or nearly complete seal with the floor surface.  Moreover, a seal of this type would effectively block air from moving through the vacuum, preventing the vacuum from picking up dirt.  When vacuuming a higher pile carpet, a vacuum with lower suction, but a strong brush roll in the Cleaner Head of the vacuum is best for removing dirt.  The brush roll aggressively agitates the dirt sending it into the nozzle where the suction collects the extracted dirt and places it in the dust bin.  Vacuum manufacturers take these considerations into account when designing vacuum nozzles.

32.     Intertek's ASTM F558 testing proves that the Dyson Animal does not have "Twice the Suction" of the Shark Powered Lift-Away when suction is tested at either point of measurement:

> a.  Euro-Pro's Shark Powered Lift-Away.  When tested pursuant to ASTM F558, Euro-Pro's Shark Powered Lift-Away has an average score of 270.09 air watts when tested at the hose, 170.52 when tested at the Cleaner Head, and 258.27 when tested using its bare floor Cleaner Head (the Genie).  Intertek's test results for the Shark Powered Lift-Away are scientifically-reliable to a 90%

confidence interval.  True and correct copies of Euro-Pro's aforementioned testing are attached hereto as Exhibit A.

    b.   <u>Dyson DC65</u>.  Intertek testing reveals that the Shark Powered Lift-Away has greater suction than the Dyson DC65 when tested pursuant to ASTM F558 at the end of the vacuum hose, and only slightly less suction (well within the margin necessary to render Dyson's "Twice the Suction" claim literally false ) than the Dyson DC65 when tested pursuant to ASTM F558 at the vacuum Cleaning Head.  When tested pursuant to ASTM F558 the DC65 produces an average of 250.68 air watts when measured at the hose and 180.07 air watts when measured at the Cleaner Head.  Intertek's test results for the Dyson DC65 are scientifically-reliable to a 90% confidence interval.  True and correct copies of Intertek's Dyson DC65 ASTM F558 test results are attached hereto as Exhibit B.  Therefore, contrary to Dyson's advertising, the Dyson DC65 does not have "Twice the Suction of Any Other Vacuum."

    c.   <u>Dyson DC41</u>. Intertek testing reveals that the Shark Powered Lift-Away has greater suction than the Dyson DC41 when tested pursuant to ASTM F558 at the vacuum Cleaning Head.  Dyson admits that its DC41 vacuum generates 160 air watts when measured at the vacuum's Cleaning Head.  As discussed above, Euro-Pro's Powered Lift-Away generates 170.52 air watts when measured at the Cleaning Head.  Therefore, contrary to Dyson's advertising, the Dyson DC41 does not have "Twice the Suction of Any Other Vacuum."

33.    Euro-Pro also out performs Dyson in deep cleaning carpets pursuant to industry standard testing.  ASTM F608-13 is the industry accepted test for the evaluation of embedded

15

dirt removal effectiveness of vacuum cleaners.  It is a very specific protocol using multiple units of each model and testing how much dirt each picks up using four different types of carpet (*i.e.*, shag, plush, multilevel and level loop).  A higher score means better performance.  When tested pursuant to ASTM F608-13, the Shark Powered Lift-Away scored an average of 36.4, while the Dyson DC65 scored an average of 33.5.  Therefore, the Shark Powered Lift-Away outperforms the Dyson DC65 by a statistically significant margin in terms of deep cleaning carpets.

> (ii)    <u>Dyson's "Twice the Suction" Claim is a Literally False Establishment Claim Because Dyson Has No Reliable Testing to Support its Claim that ASTM F558 Testing Proves that the Dyson Animal Has "Twice the Suction" of the "Top-Performing" Shark Product</u>.

34.    Dyson's claim that its "Twice the Suction" advertising is proven by purported testing against the "upright market to ASTM F558 at cleaner head, dust-loaded as per IEC 60312-1" and "compared to top-performing product for each brand" is an establishment claim because it represents that tests prove Dyson's suction performance claim about the Dyson Animal. Therefore, to prove literal falsity, Euro-Pro only needs to show that Dyson's purported tests do not establish the proposition for which they are cited, including by demonstrating that Dyson's tests are not sufficiently reliable to permit the conclusion that the Dyson Animal has "Twice the Suction" of all other vacuum products, including those in the Shark line.

35.    Dyson's "Twice the Suction" advertising claims compare the Dyson Animal to the "top-performing product for each brand," including specifically the "Shark Navigator Lift Away."  However, since July 8, 2014, the Shark Powered Lift-Away has replaced the Shark Navigator Lift-Away as the "top-performing product" in the Shark vacuum line.  As a result, any testing by Dyson on the Shark Navigator Lift-Away can no longer reliably establish that the Dyson Animal has "Twice the Suction of Any Other Vacuum" compared to "the top-performing product for each brand."

36.     Furthermore, as alleged above, Euro-Pro's independent third-party laboratory suction testing, conducted pursuant to the ASTM F558 test method referenced by Dyson, proves that the Dyson Animal does not have "Twice the Suction" of the Shark Powered Lift-Away. Therefore, upon information and belief, Dyson has no ASTM F558 testing that proves that the Dyson Animal has "Twice the Suction" of the Shark Powered Lift-Away.

**B.      Dyson's Direct Comparative Claims Regarding Suction Are Material to Consumers.**

37.     Dyson's claim that the Dyson Animal has "Twice the Suction of Any Other Vacuum," including specifically the Shark Rotator line of vacuums, is material in that it is likely to influence consumers' purchasing decisions.

38.     The ability of the Dyson Animal to create better suction than competing products, including the Shark Rotator, concerns an inherent quality or characteristic of the product that is undoubtedly important to consumers.  The primary use of an upright vacuum cleaner is to clean floor surfaces, and suction is one important aspect of cleaning performance.  An upright vacuum product's ability to create suction more effectively than the competition is something consumers are certain to take into account when deciding whether or not to purchase the Dyson Animal, the Shark Powered Lift-Away, or another upright vacuum product.

39.     Dyson recognizes the materiality of its "[t]wice the suction" advertising claim by making it the focal point of its point-of-purchase advertising.

**C.      Dyson's Literally False Advertising Claims Are Designed to Intentionally Mislead and Deceive Consumers.**

40.     Upon information and belief, Dyson's false advertising is willful and knowing because Dyson continues to disseminate its "Twice the Suction" advertising despite the fact that

Euro-Pro first notified Dyson in May 2014, that its impending launch of the Shark Powered Lift-Away would render its advertising false and misleading.

41.     On May 7, 2014, Euro-Pro's outside counsel sent a letter to Dyson's associate general counsel informing Dyson that Euro-Pro would soon release the Shark Powered Lift-Away, a new product with suction performance that would render Dyson's "Twice the Suction" advertising false.

42.     On July 9, 2014, Euro-Pro's general counsel again sent a letter to Dyson's general counsel informing Dyson that Euro-Pro had now launched its new Shark Powered Lift-Away, and that testing on that product, pursuant to ASTM F558, showed that Dyson's "Twice the Suction" claim was literally false.

43.     In fact, Dyson purchased three Shark Powered Lift-Away vacuum units directly from Euro-Pro on July 11, 2014.  Those vacuums were shipped to Dyson on July 17, 2014 and delivered to Dyson on July 22, 2014.

44.     On July 22, 2014, Dyson's general counsel responded to Euro-Pro's general counsel with a letter stating that Dyson could not reject or validate Euro-Pro's allegations without first viewing Euro-Pro's test results or testing the Shark Powered Lift-Away itself. Dyson's letter also informed Euro-Pro that it had taken steps to purchase and test the new Shark Powered Lift-Away Vacuum.

45.     After Dyson had over one month to test the vacuums, on September 9, 2014, Euro-Pro's general counsel sent a letter to Dyson's general counsel also providing Euro-Pro's independent third-party ASTM F558 testing showing that the Dyson Animal does not have "Twice the Suction" of the Shark Powered Lift-Away.  In the letter, Euro-Pro's general counsel reiterated Euro-Pro's demand that Dyson, among other things, remove the false advertising claim

from its retail packaging and take down any in-store displays in which Dyson features the false "Twice the Suction" advertising claim.  Euro-Pro demanded that Dyson discontinue all "Twice the Suction" advertising, including all Internet advertising immediately and all point-of-sale advertising by no later than September 30, 2014.

46.     In response, Dyson has not contested the fact that its "Twice the Suction" advertising claims are now literally false.  Nonetheless, Dyson has refused to comply with Euro-Pro's September 30, 2014 timeframe for discontinuing its now-deceptive advertising, even though Euro-Pro first notified Dyson of the Shark Powered Lift-Away over four months ago.

47.     Despite these repeated warnings from Euro-Pro, Dyson continues to feature its false and misleading "Twice the Suction" claims at point-of-purchase and on the Internet even though (1) Dyson's claims are no longer accurate; and (2) Euro-Pro, as a courtesy, specifically informed Dyson in May 2014, that the Shark Powered Lift-Away's launch was imminent so that Dyson could position itself to remove the advertising claim in a timely and cost-efficient manner.  At this point, Dyson's continued delay is clearly calculated toward keeping its false advertising claims on store shelves through the busy upcoming holiday shopping season.  As a result, Dyson's false advertising is both willful and knowing.

## COUNT ONE
### False Advertising
### Lanham Act, 15 U.S.C. § 1125(a)(1)(B)
### (Monetary and Injunctive Relief)

48.     Euro-Pro hereby incorporates by reference and realleges the foregoing paragraphs as if fully set forth herein.

49.     Euro-Pro and Dyson are direct competitors in the market for the sale of upright bag-less vacuum cleaner products.

50.     Dyson has used and continues to use false and misleading descriptions and misrepresentations of fact, in commercial advertising and promotion, regarding the nature, quality, and performance of its products and those of its competitors, that have deceived or have the tendency to deceive a substantial segment of the buying audience.  As articulated above, Dyson's advertisements falsely claim that the Dyson Animal has "Twice the Suction of Other Vacuums," which includes the Shark Powered Lift-Away, as proven by purported testing against the "upright market to ASTM F558 at cleaner head, dust-loaded as per IEC 60312-1" and "compared to top-performing product for each brand."  These false and misleading statements by Dyson constitute false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), on the following bases:

a. As direct comparative superiority claims, these advertisements are literally false and misleading because Euro-Pro's Shark Powered Lift-Away has greater or nearly equal suction power compared to the Dyson Animal when subjected to independent third-party laboratory suction testing pursuant to ASTM F558; and

b. As establishment claims, these advertisements are literally false and misleading because Dyson's claimed tests do not reliably establish the proposition for which they are cited—namely, that the Dyson Animal has "Twice the Suction of All Other Vacuums," which includes the Shark Powered Lift-Away.

51.     Dyson causes, and has caused, its false and misleading advertising to enter interstate commerce, including by making false and misleading claims in national Internet advertising and point-of-purchase advertising.

52.     Dyson's false and misleading claims are material in that they are likely to influence consumers' purchasing decisions and because they are direct comparative superiority claims that relate to inherent qualities or characteristics of the product.

53.     As a direct and proximate result of the wrongful acts of Dyson alleged above, Euro-Pro has suffered, and will continue to suffer, substantial damage to its business reputation, goodwill, and market share, as well as diversion of sales from itself to Dyson and loss of profits in an amount not yet ascertained.  Dyson's false advertising will continue to harm Euro-Pro, causing irreparable injury for which there is no adequate remedy at law, unless preliminarily and permanently enjoined by this Court pursuant to 15 U.S.C. § 1116.

54.     Based on the foregoing, Euro-Pro is entitled to enhanced monetary damages of up to three times the amount of Euro-Pro's actual damages and/or Dyson's profits resulting from Dyson's false advertising, in an amount to be proven at trial, and the costs of the action, pursuant to 15 U.S.C. § 1117.  Euro-Pro is also entitled to an accounting of Dyson's profits resulting from its Lanham Act violations.

55.     Upon information and belief, Dyson's false advertising is willful, knowing, calculated to deceive, and was undertaken in bad faith.  As a result, this Court should determine that this is an exceptional case and award Euro-Pro its attorneys' fees and costs incurred in prosecuting this action pursuant to 15 U.S.C. § 1117.

**COUNT TWO**
**Deceptive Trade Practices**
**Massachusetts Unfair Practices Act, Mass. Gen. Laws ch. 93A, § 11**
**(Monetary and Injunctive Relief)**

56.     Euro-Pro hereby incorporates by reference and realleges the foregoing paragraphs as if fully set forth herein.

57.     The Massachusetts Unfair Practices Act prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce."  Mass. Gen. Laws ch. 93A, § 2(a).  In construing violations of this provision, the statute instructs courts to "be guided by interpretations given by the Federal Trade Commission and the Federal Courts to section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. § 45(a)(1)), as from time to time amended."  Mass. Gen. Laws ch. 93A, § 2(b).

58.     As stated above, Dyson has disseminated advertisements regarding the Dyson Animal that contain false, deceptive, and misleading representations regarding the suction capabilities of the Dyson Animal compared to those of the Shark Powered Lift-Away.  Dyson knows or should know that those representations are false, deceptive and misleading.  Dyson's false, deceptive, and misleading direct comparative advertising claims constitute deceptive acts and practices in violation of Sections 2 and 11 of the Massachusetts Unfair Practices Act, Mass. Gen. Laws ch. 93A, §§ 2(a), 11.

59.     Dyson's acts, conduct, and practices described above, and the effects of those acts, conduct and practices, have occurred and are occurring primarily and substantially within the Commonwealth of Massachusetts.

60.     As a result of Dyson's unlawful conduct, Euro-Pro has suffered, and will continue to suffer, substantial damage to its business reputation and goodwill, as well as diversion of trade and loss of profits in an amount not yet ascertained.  Dyson's unlawful conduct will continue to harm Euro-Pro, causing irreparable injury for which there is no adequate remedy at law, unless preliminarily and permanently enjoined by this Court under Mass. Gen. Laws ch. 93A, § 11.

61.     Based on the foregoing, Euro-Pro is entitled to recover its actual damages and its reasonable attorneys' fees and costs pursuant to Mass. Gen. Laws ch. 93A, § 11.

62.     Upon information and belief, Dyson's unlawful acts are willful and knowing.  As a result, this Court should award Euro-Pro up to triple, but no less than double, its actual damages pursuant to Mass. Gen. Laws ch. 93A, § 11.

## COUNT THREE
### False Advertising
### Mass. Gen. Laws ch. 266, § 91
### (Injunctive Relief Only)

63.     Euro-Pro hereby incorporates by reference and realleges the foregoing paragraphs as if fully set forth herein.

64.     Dyson has disseminated advertisements regarding the Dyson Animal within the Commonwealth of Massachusetts that contain untrue, deceptive, and/or misleading representations regarding the suction capabilities of the Dyson Animal compared to those of the Shark Powered Lift-Away.  Upon information and belief, Dyson has done so with knowledge that its advertisements contain untrue, deceptive, and/or misleading claims.  Dyson's intentional dissemination of untrue, deceptive, and/or misleading representations within the Commonwealth of Massachusetts constitutes a violation of Mass. Gen. Laws ch. 266, § 91.

65.     As a result of Dyson's unlawful conduct, Euro-Pro has suffered, and will continue to suffer, substantial damage to its business reputation and goodwill, as well as diversion of trade and loss of profits in an amount not yet ascertained.  Dyson's unlawful conduct will continue to harm Euro-Pro, causing irreparable injury for which there is no adequate remedy at law, unless preliminarily and permanently enjoined by this Court pursuant to Mass. Gen. Laws ch. 266, § 91.

## PRAYER FOR RELIEF

WHEREFORE, Euro-Pro seeks the following relief:

(a)     For a judgment finding Dyson guilty of false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), with respect to its marketing and advertising of the Dyson Animal;

(b)     For a judgment that Dyson has willfully, knowingly, and deliberately committed acts of false advertising and that this is an "exceptional case" under Section 35 of the Lanham Act, 15 U.S.C. 1117(a);

(c)     For a judgment finding Dyson guilty of violating Massachusetts Unfair Practices Act, Mass. Gen. Laws ch. 93A, §§ 2, 11, and Mass. Gen. Laws ch. 266, § 91, which prohibit deceptive trade practices and false advertising;

(d)     For an order pursuant to Section 34 of the Lanham Act, 15 U.S.C. § 1116; Mass. Gen. Laws ch. 93A, § 11; and/or Mass. Gen. Laws ch. 266, § 91, that Dyson, and its officers, agents, servants, employees, representatives, and all persons acting in concert or participation with any of them, be preliminarily and permanently enjoined from making false and misleading statements of fact in any advertising concerning the Shark Powered Lift-Away or any Euro-Pro vacuum product, including but not limited to the false statements identified above;

(e)     For an award pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117, and/or Mass. Gen. Laws ch. 93A, § 11, of up to three times the amount of Euro-Pro's actual monetary damages according to proof, but in no case less than double its damages, exclusive of interest and costs plus prejudgment interest, resulting from Dyson's false advertising;

(f)     For an award pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117, of an accounting of Dyson's profits resulting from its Lanham Act violations and a disgorgement of those profits in an amount to be proven at trial;

      (g)     For an award of Euro-Pro's attorneys' fees, costs, and disbursements incurred in prosecuting this action, pursuant to Section 35 of the Lanham Act, 15 U.S.C. 1117(a), and/or Mass. Gen. Laws ch. 93A, § 11; and

      (h)     For such other and further relief as the Court may deem appropriate.

## **JURY TRIAL DEMAND**

Euro-Pro demands a trial by jury on all claims as to which jury trial may be had.

Dated: September 26, 2014

                       Respectfully submitted,

                       EURO-PRO OPERATING LLC

                       By its attorneys,

                       /s/ Robert D. Carroll
                       Robert D. Carroll (BBO# 662736)
                       rcarroll@goodwinprocter.com
                       GOODWIN PROCTER LLP
                       Exchange Place
                       53 State Street
                       Boston, Massachusetts 02109
                       Tel: (617) 570-1753
                       Fax: (617) 523-1231

*Of Counsel*

Roger A. Colaizzi (*pro hac to be filed*)
rcolaizzi@venable.com
Christopher S. Crook (*pro hac to be filed*)
cscrook@venable.com
David D. Conway (*pro hac to be filed*)
ddconway@venable.com

VENABLE LLP
575 Seventh Street, N.W.
Washington, D.C. 20004
Tel: (202) 344-4000
Fax: (202) 344-8300

## **VERIFICATION**

I, Mark Barrocas, state that I am an officer of Euro-Pro Operating LLC that I have read the foregoing Verified Complaint, and that the allegations in the Verified Complaint are true, based on my personal knowledge, except where they are indicated to be based upon information and belief, and as to those allegations, I am informed and believe them to be true.

Subscribed and sworn to under the penalties of perjury this 26 day of September, 2014.


_____
Mark Barrocas