UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| EURO-PRO OPERATING LLC, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | 1:14-cv-13720-ADB |
| | * | |
| DYSON INC., and DYSON LTD., | * | |
| | * | |
| Defendants. | * | |

**<u>ORDER</u>**

BURROUGHS, D.J.

Before the Court are (1) Plaintiff SharkNinja Operating, LLC's[1] Motion for Clarification or Reconsideration, Or, In the Alternative, For Leave to Amend the Complaint [ECF No. 134], and (2) Plaintiff's Motion for Alternative Dispute Resolution [ECF No. 143]. For the reasons set forth herein, both of Plaintiff's motions are <u>DENIED</u>.

This case involves a dispute between two competing vacuum manufacturers. Plaintiff's First Amended Complaint [ECF No. 40, hereinafter "Amended Complaint"] sets forth the following relevant facts. In 2013, Defendants launched a national advertising campaign promoting a new line of vacuum cleaners known as the "Dyson Animal." [Id. ¶ 1]. As part of that campaign, Defendants made advertising claims that its Dyson Animal vacuums had "twice the suction" of any other competing vacuum cleaner, including those manufactured by Plaintiff. [Id.]. On July 8, 2014, however, Plaintiff launched a vacuum product called the "Shark Powered Lift-Away." [Id. ¶ 17]. Plaintiff alleges that the Shark Powered Lift-Away has "top-performing

---

[1] When Plaintiff commenced this civil action, its name was Euro-Pro Operating LLC; however, on September 18, 2015, Plaintiff filed a Notice of Name Change, informing the Court that its name had been changed to "SharkNinja Operating LLC." [ECF No. 93].

1

suction performance," and that the introduction of the Shark Powered Lift-Away "render[ed] Dyson's 'Twice the Suction' claims literally false and misleading." [Id. ¶ 2]. The Amended Complaint alleges that independent, third-party laboratory tests clearly demonstrate that the Dyson Animal does not, in fact, have twice the suction of the Shark Powered Lift-Away. [Id. ¶¶ 33, 37]. Accordingly, Plaintiff claims that Defendants' "twice the suction" claims are now literally false, because "since July 8, 2014, the Shark Powered Lift-Away has replaced [prior Shark products] as the 'top performing product' in the Shark vacuum line," and that "[a]s a result, any testing by Dyson on the [prior Shark products] can no longer reliably establish that the Dyson Animal has 'Twice the Suction of Any other Vacuum.'" [Id. ¶ 40].

The Amended Complaint contains three claims for relief. Count One alleges false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B); Count Two alleges deceptive trade practices in violation of Massachusetts General Laws Chapter 93A, § 11; and Count Three alleges false advertising in violation of Massachusetts General Laws Chapter 266, § 91.

In the Amended Complaint and throughout this litigation, including active motion practice and numerous related court appearances, Plaintiff has consistently taken the position that the gravamen of the dispute is that the introduction of the Shark Powered Lift-Away rendered Dyson's "twice the suction" claim literally false. For example, paragraph 2 of the Amended Complaint alleges in pertinent part that "Euro-Pro recently introduced its newest vacuum product called the Shark Rotator Powered Lift-Away Upright . . . which has top-performing suction performance that renders Dyson's 'Twice the Suction' claims literally false and misleading." [ECF No. 40]. Similarly paragraph 3 of the Amended Complaint states that

> Euro-Pro first notified Dyson in May 2014, that Euro-Pro's impending launch of the Shark Powered Lift-Away would render Dyson's "Twice the

>Suction" advertising false and misleading. Euro-Pro again contacted Dyson in July 2014, this time to inform it that Euro-Pro had now launched its new Shark Powered Lift-Away, and that testing on that product . . . showed that Dyson's "Twice the Suction" claim was literally false.

[Id.]. Paragraph 45 of the Amended Complaint asserts that "[u]pon information and belief, Dyson's false advertising is willful and knowing because Dyson continues to disseminate its 'Twice the Suction' advertising despite the fact that Euro-Pro first notified Dyson in May 2014, that its impending launch of the Shark Powered Lift-Away would render its advertising false and misleading." [Id.].

This theme is evidenced throughout the Amended Complaint, and it has been confirmed through in-court statements and other documents filed with the Court by Plaintiff and Defendant, demonstrating that both parties understood this case to revolve around the allegation that Dyson continued to claim that its vacuums had "twice the suction" even after the introduction of the Shark Powered Lift-Away. For example, in the parties' March 30, 2015 Joint Statement submitted in advance of the Rule 16 Scheduling Conference, Plaintiff described the case, in a nutshell, as follows:

>This case involves false advertising in violation of the federal Lanham Act based on Dyson's false statement that its vacuums have "Twice the Suction" of any other vacuums, including competitor-Plaintiff Euro-Pro's vacuums. Dyson kept its false statements on the market for more than half a year despite having express and scientific evidence (from Euro-Pro, from Dyson itself, and from Dyson's outside laboratory), that Dyson's advertising was expressly and literally false. Contrary to Dyson's "Twice the Suction" advertising, Dyson's vacuums do not have Twice the Suction of Euro-Pro's Shark Rotator Powered Lift-Away vacuum.

[ECF No. 38]. Similarly, in Dyson's May 4, 2015 Memorandum in support of its partial motion to dismiss Euro-Pro's First Amended Complaint, Dyson wrote "[a]s discussed at the April 6, 2015 Pre-Trial Scheduling Conference before the Court, the parties do not dispute that the claim was literally true when Dyson introduced it, but it merely became outdated when Euro-Pro

3

subsequently released its new Shark Rotator Powered Lift-Away a year later." [ECF No. 47, p. 1]. Notably, Plaintiff did not dispute this representation in its Opposition to Dyson's Motion to Dismiss. [ECF No. 53]. Instead, Plaintiff pointed out that Dyson was continuing to make the "twice the suction" claim "*over ten months* after Euro-Pro notified Dyson that 'its impending launch of the Shark Powered Lift-Away would render its advertising false and misleading.'" [Id., p. 8] (emphasis in original).

Nonetheless, nearly six months later, on November 9, 2015, which was shortly before the close of fact discovery, Plaintiff filed a Motion to Compel the production of certain documents. [ECF No. 108]. Plaintiff's Motion sought the production of, *inter alia*, documents relating to testing performed on Dyson vacuums as far back as 2012. Dyson objected to these requests as irrelevant to any disputed issue in the case, and not reasonably likely to lead to the discovery of admissible evidence. Specifically, Dyson noted that the Amended Complaint did not allege that Defendant's "twice the suction" claims were literally false or misleading from inception; rather, the Amended Complaint merely alleged that those claims *became* literally false and misleading when the Shark Powered Lift-Away was launched into the marketplace. Therefore, Defendants argued that documents relating to their initial testing on the Dyson Animal in 2012 were not relevant to Plaintiff's literal falsity claims.

On November 20, 2015, the parties appeared before the Court for a hearing on Plaintiff's Motion to Compel and on Defendants' Motion for an Emergency Protective Order [ECF No. 100]. In its Motion to Compel and at the hearing, Plaintiff argued—for the first time in this litigation—that the Amended Complaint "contains allegations of literal falsity which are not restricted in time," [ECF No. 109, p. 8], and that it had sufficiently alleged that Dyson's "twice

4

the suction" advertising was literally false even before Plaintiff launched the Shark Powered Lift-Away.

For the reasons set forth on the record at the November 20, 2015 hearing, the Court denied Plaintiff's Motion to Compel insofar as Plaintiff sought to discover testing documents aimed at determining whether Defendants' "twice the suction" claim was literally false from inception. The Court held that Plaintiff's literal falsity claim under the Lanham Act, as alleged in Count One of the Amended Complaint, was limited to the allegation that Defendants' "twice the suction" claims became literally false *only* after the introduction of the Shark Powered Lift-Away in 2014. The Court noted that Plaintiff's Amended Complaint did not allege that Defendants' advertising claims were literally false at inception, and that Plaintiff would have needed to amend the Amended Complaint to assert such a claim.

More than a month later, and after the close of discovery, Plaintiff filed the instant Motion For Clarification, Or In The Alternative For Leave To Amend The Complaint, in which Plaintiff (1) asserts that the Court's ruling on its Motion to Compel constituted an improper sua sponte dispositive ruling on the validity of its establishment claim, and (2) seeks reconsideration, or alternatively, leave to amend the First Amended Complaint or take an interlocutory appeal. The Court, in response to Plaintiff's Motion for Clarification or Reconsideration, now reaffirms its holding that the First Amended Complaint is limited to allegations that Defendants' "twice the suction" claim became literally false only after the introduction of the Shark Powered Lift-Away, and that the First Amended Complaint does not allege a claim that the "twice the suction" claim was false from its inception. Overall, the Court has little patience for Plaintiff's late efforts to pursue a legal theory that is not articulated anywhere in the operative Complaint. Furthermore, Plaintiff's attempt to frame the Court's ruling on Plaintiff's discovery motion as a sua sponte

dismissal of a heretofore non-existent legal claim is entirely unsupportable, in light of the record and Plaintiff's own conduct throughout this litigation.

In support of its motion, Plaintiff argues that Paragraphs 39 and 72(b) of the Amended Complaint adequately allege that the "twice the suction" claim was literally false from its inception. The Court disagrees. Paragraph 39 of the Amended Complaint alleges as follows:

> Dyson's claim that its "Twice the Suction" advertising is proven by purported testing against the "upright market to ASTM F558 at cleaner head, dust-loaded as per IEC 60312-1" and "compared to top-performing product for each brand" is an establishment claim because it represents that tests prove Dyson's suction performance claim about the Dyson Animal. Therefore, to prove literal falsity, SharkNinja only needs to show that Dyson's purported tests do not establish the proposition for which they are cited, including by demonstrating that Dyson's tests are not sufficiently reliable to permit the conclusion that the Dyson Animal has "Twice the Suction" of all other vacuum products, including those in the Shark line.

[ECF No. 40, ¶ 39]. First, Paragraph 39 does not even contain any factual allegations on which a literal falsity claim could be based. Instead, Plaintiff sets forth legal conclusions about the requirements of a literal falsity claim. Such legal conclusions need not be credited. See Cardigan Mountain Sch. v. N.H. Ins. Co., 787 F.3d 82, 84 (1st Cir. 2015). Furthermore, Paragraph 39 is immediately followed by Paragraph 40, which would appear to set forth the actual factual grounds for Plaintiff's literal falsity claim:

> Dyson's "Twice the Suction" advertising claims compare the Dyson Animal to the "top-performing product for each brand," including specifically the "Shark Navigator Lift Away." However, since July 8, 2014, the Shark Powered Lift-Away has replaced the Shark Navigator Lift-Away as the "top performing product" in the Shark vacuum line. As a result, any testing by Dyson on the Shark Navigator Lift-Away can no longer reliably establish that the Dyson animal has "Twice the Suction of Any Other Vacuum" compared to "the top-performing product for each brand."

6

[Id. ¶ 40]. Thus, contrary to Plaintiff's arguments, Paragraph 39 tends to confirm that Plaintiff's literal falsity claim is limited to the period after Plaintiff introduced the Shark Powered Lift-Away.

Similarly, Paragraph 72(b) does not allege that Defendants' "Twice the Suction" claim was literally false or misleading from inception. Paragraph 72(b) alleges that Dyson's "twice the suction" advertisements, "as establishment claims, are literally false and misleading because Dyson's claimed tests do not reliably establish the proposition for which they are cited – namely, that the Dyson Animal has 'Twice the Suction of All Other Vacuums,' which includes the Shark Powered Lift-Away." [Id. ¶ 72(b)]. When read in context of the Amended Complaint as a whole, Paragraph 72(b) does not provide Defendants with notice that Plaintiff was alleging literal falsity from inception. First, there are no facts in the Amended Complaint that would support such an allegation. Second, Paragraph 72(b), as well as Paragraph 72(a), and Paragraph 72 more generally, allege that Defendants' Twice the Suction claims were *specifically* false with respect to the Shark Powered Lift-Away. [Id. ¶¶ 72]. Thus, the only plausible reading of Paragraph 72(b) (which appears towards the end of the Amended Complaint, under the heading "Count One"), is that it restates and summarizes the previous allegations concerning the release of the Shark Powered Lift-Away, which is the only literal falsity claim previously alleged in the Amended Complaint. Paragraph 72(b) cannot fairly be read to introduce new facts or theories.

In sum, Paragraphs 39 and 72(b), considered in conjunction with the other allegations of the Amended Complaint, allege that Dyson's "twice the suction" claims became literally false only after Plaintiff launched its Shark Powered Lift-Away. No other literal falsity claim is alleged in the Amended Complaint, and the Court rejects Plaintiff's belated attempt to amend the

7

pleadings in this regard.[2] Although Plaintiff complains that this ruling amounts to a sua sponte dismissal of its establishment claim, the Court rejects this characterization, as the Court cannot dismiss a claim that was never alleged in the first place. Instead, the Court reaffirms its previous denial of Plaintiff's Motion to Compel [ECF No. 108], insofar as Plaintiff seeks to compel the production of testing documents aimed at determining whether Dyson's "twice the suction" claims were literally false at inception. Such documents are not reasonably likely to lead to the discovery of admissible evidence relevant to Plaintiff's claims for relief, as those claims have been pleaded in the Amended Complaint.

Finally, Plaintiff's Motion to Amend its Amended Complaint is denied. Although Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend should be freely granted "when justice so requires," that liberal standard is replaced by a "more demanding 'good cause' standard" after a party misses the deadline to amend set forth in the Court's scheduling order. Steir v. Girl Scouts of the USA, 383 F.3d 7, 12 (1st Cir. 2004) (citations omitted). Here, the Court entered a Scheduling Order providing that all motions to amend the pleadings must be filed by June 15, 2015. [ECF No. 43]. Plaintiff has not demonstrated good cause for waiting until December 23, 2015 to move to amend, particularly when all fact discovery closed on November 24, 2015. [ECF No. 89]. The Court further finds that Plaintiff was in agreement with Defendants' position on the literal falsity claim, or, at a minimum, was on notice of Defendants' position

---

[2] The Court notes that the Amended Complaint does allege that Defendants' "twice the suction" claim was *impliedly* false from inception, on the basis that a claim of "twice the suction" falsely implies that the Dyson Animal had superior cleaning power. [Amended Complaint, ¶¶ 56-69]. Plaintiff, however, has not argued that the documents it sought to compel are relevant to this implied falsity claim; instead, Plaintiff has insisted that the issues presented in its Motion to Compel are relevant to its claim of *literal* falsity. The Court clarifies that its rulings to date, and its ruling in this Order, are limited to the Plaintiff's literal falsity claim, and that the Court has not addressed, nor has it been asked to address, any issues relating to the implied falsity allegations in Paragraphs 56-69 of the Amended Complaint.

several months prior to the close of fact discovery, and yet Plaintiff did not file its Motion to Compel until November 9, 2015, two weeks before fact discovery closed. Plaintiff's Motion to Amend was filed more than a month later. Plaintiff offers no valid explanation for why it failed to raise this critical issue earlier in the proceedings. The Court further finds that allowing an amendment at this stage of proceedings would be unduly prejudicial, as it would require the re-opening of fact discovery and the taking of additional depositions in support of a legal theory that Plaintiff did not attempt to advance until far too late in the life of this case.

For the foregoing reasons:

1. Plaintiff's Motion for Reconsideration [ECF No. 134] is <u>DENIED</u>. For the reasons stated on the record at the November 20, 2015 hearing, and for the reasons set forth in this Order, the Court reconfirms its prior rulings on Plaintiff's Motion to Compel [ECF No. 108] and further denies Plaintiff's request to amend its First Amended Complaint.

2. Plaintiff's request to certify the Court's ruling for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) [ECF No. 134] is also <u>DENIED</u>, as Plaintiff has not demonstrated circumstances that would warrant an interlocutory appeal.

3. Plaintiff's Motion for Alternative Dispute Resolution [ECF No. 143] is <u>DENIED</u> without prejudice. Although the Court commends Plaintiff's willingness to engage in ADR, in light of Defendants' Response to Plaintiff's Motion for Alternative Dispute Resolution [ECF No. 144], the Court does not believe that additional settlement conferences or mediation sessions are likely to be productive at this time. Plaintiff may renew its request for a referral to the Court's Alternative Dispute Resolution program after dispositive motions have been fully briefed.

**SO ORDERED.**

Dated: February 12, 2016

/s/ Allison D. Burroughs  
ALLISON D. BURROUGHS  
U.S. DISTRICT JUDGE