UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| SHARKNINJA OPERATING LLC, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | No: 14-cv-13720-ADB |
| | * | |
| DYSON INC. and DYSON LTD., | * | |
| | * | |
| Defendants. | * | |

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

BURROUGHS, D.J.

The parties, SharkNinja Operating LLC ("SharkNinja"), and Dyson Inc. and Dyson LTD (together, "Dyson"), are competitors in the household vacuum market. In this action, each accuses the other of disseminating false and misleading advertising about their respective vacuum products, in violation of the federal Lanham Act, 15 U.S.C. § 1125(a), and Massachusetts state law.

In 2013, Dyson launched an advertising campaign claiming that certain of its vacuums had "twice the suction of any other vacuum" on the market. In July 2014, however, SharkNinja released a vacuum called the Shark Powered Lift-Away (the "Shark Lift-Away"). SharkNinja claims that Dyson's "twice the suction" advertising claims became literally false no later than July 2014, when the Shark Lift-Away was introduced, because Dyson vacuums did not, in fact, have "twice the suction" of the Shark Lift-Away. In its First Amended Complaint, [ECF No. 40] ("Compl."), SharkNinja asserts claims for false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B) (Count I); deceptive trade practices in violation of Mass. Gen. Laws, ch. 93A (Count II); and false advertising in violation of Mass. Gen. Laws, ch. 266, § 91 (Count III).

Dyson filed counterclaims [ECF No. 59] for false advertising in violation of the Lanham Act (Count I), and violations of Mass. Gen. Laws, ch. 93A (Count II), which arise out of SharkNinja's advertising campaign for its Shark Rocket upright stick vacuum (the "Shark Rocket"). Specifically, the packaging for the Shark Rocket claimed that the product "deep cleans carpets better vs. a Full Size Dyson." Dyson, however, alleges that the Shark Rocket does not clean carpets better than every full-sized Dyson vacuum, and that SharkNinja's advertising claims are therefore false and misleading.

Before the Court are the parties' cross-motions for summary judgment. For the reasons set forth in this Memorandum and Order, SharkNinja's Motion for Summary Judgment [ECF No. 171] is ALLOWED IN PART and DENIED IN PART. Dyson's Motion for Summary Judgment [ECF No. 169] is DENIED.

## I.      FACTS[1]

### A.  Dyson's campaign: "Twice the Suction"

In July 2013, Dyson launched its "twice the suction" ("TTS") advertising claims in connection with its DC41 vacuum cleaner.  Dyson's advertisements, which appeared in print, television, and internet advertising, as well as on point of purchase displays in some retail locations, and on packaging for the DC41, claimed that the DC41 had "twice the suction of any other vacuum." Subsequently, Dyson also included the TTS claim on advertisements for its DC65 vacuum, which became available in a limited release in January 2014, and nationwide in March 2014.

---

[1] These facts are drawn from the following documents: SharkNinja's Statement of Undisputed Material Facts [ECF Nos. 177, 182]; Dyson's Response thereto [ECF No. 214]; Dyson's Statement of Undisputed Material Facts [ECF Nos. 172, 188]; SharkNinja's Response thereto [ECF Nos. 199, 206]; Shark Ninja's Sur-Reply [ECF No. 221]; and Dyson's Sur-Reply [ECF No. 224]. As the Court is resolving cross-motions for summary judgment, any factual disputes are construed in favor of the relevant non-moving party.

On May 7, 2014, counsel for SharkNinja sent a letter to in-house counsel at Dyson, advising him that in July 2014, SharkNinja intended to launch a new vacuum, and that the performance capabilities of this new vacuum would render Dyson's TTS claim literally false. According to SharkNinja's counsel, testing on the new Shark vacuum proved that the DC65 no longer had "twice the suction of any other vacuum." SharkNinja's letter, however, did not enclose any test results. The letter further stated that upon launch of the new Shark vacuum, SharkNinja expected Dyson to remove its TTS advertising claim from the market.

SharkNinja began selling its new vacuum, the Shark Lift-Away, on July 8, 2014. On July 9, 2014, SharkNinja's general counsel sent another letter to Dyson's general counsel, informing him that the Shark Lift-Away was officially on the market, and that testing demonstrated that Dyson's TTS claim was literally false. Again, however, SharkNinja did not enclose any test results with its letter, nor did it provide Dyson with a sample Lift-Away vacuum product for testing purposes.

Shortly after the launch, Dyson purchased three Shark Lift-Away units directly from SharkNinja's website. Those vacuums were delivered to Dyson's U.S. offices on July 22, 2014, and were subsequently sent to Dyson's U.K. office for internal testing. Dyson completed its internal testing in early August, 2014. Dyson also purchased additional Lift-Away vacuums, which it sent to a third-party testing facility. Dyson received the results of those third-party tests in early September, 2014. In addition, SharkNinja provided Dyson with its own third-party test results on September 10, 2014, which purportedly showed that the DC65 and the DC41 did not have "twice the suction" of the Shark Lift Away. Thus, no later than early September, 2014, Dyson had received both internal and third-party test results confirming that the Shark Lift-Away had more than half the suction of the DC65 and the DC41. Dyson now concedes, as a factual

matter, that the launch of the Shark Lift-Away rendered its TTS claim literally false as of July 8, 2014.

The parties dispute what happened over the next several months. Dyson argues that once it realized the TTS claim had become "stale," it took prompt, commercially reasonable steps to remove that advertising claim from the marketplace. SharkNinja, in contrast, contends that Dyson dragged its feet. For example, Dyson did not begin "stickering over" the TTS claim on product packaging in stores until November 17, 2014. SharkNinja argues that as a result of Dyson's dilatory response, the false TTS claim remained on the market until early 2015, and that it hindered sales and market growth of SharkNinja's Lift-Away vacuum.[2]

**B.  SharkNinja's campaign: "Cleans Carpets Better vs. a Full Size Dyson"**

On September 9, 2013, SharkNinja launched an upright stick vacuum known as the "Rocket," which SharkNinja marketed as a light-weight alternative to full-size upright vacuums. SharkNinja sells the Rocket in a variety of ways, including through television infomercials, via website sales, and in retail stores.

For some period of time, the product packaging box for the Rocket vacuum contained a promotional statement claiming that the Rocket "deep cleans carpets better vs. a full size Dyson*". The asterix corresponds to a qualifying footnote, which stated "*Based on the Dyson DC40 ASTM F608 (imbedded dirt removal on carpet)." Although the "cleans carpets better vs. a full size Dyson*" claim appeared on five out of the six box panels for the Rocket vacuum, the footnote appeared only on one side panel, at the very bottom, in tiny print.[3]

---

[2] Based on the current record, the Court is not able to determine the date by which the TTS claim was entirely removed from the marketplace.

[3] It also appears that SharkNinja may have made similar comparison claims in TV infomercials. SharkNinja, however, has objected to the Court considering this evidence on summary judgment, on the grounds that the infomercials have not been properly authenticated under Fed. R. Civ. P.

Dyson argues that the disclaimer is too small and discreetly placed for consumers to take notice of it, and that as a result, SharkNinja's claim that the Rocket "deep cleans carpets better vs. a full size Dyson*" necessarily communicates to consumers that the Rocket outperforms *every* full-sized Dyson upright vacuum, and not just the DC40. Dyson further alleges that this claim is demonstrably false, because the Rocket did not clean carpets better than all Dyson upright vacuums – specifically, the DC65 and the Dyson Ball Multi-Floor performed better than the Rocket.

## II.    LEGAL STANDARD

### A.  False advertising under the Lanham Act

To prove a false advertising claim under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), a plaintiff must demonstrate that:

> (1) the defendant made a false or misleading description of fact or representation of fact in a commercial advertisement about his own or another's product; (2) the misrepresentation is material, in that it is likely to influence the purchasing decision; (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; (4) the defendant placed the false or misleading statement in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products.

Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave., 284 F.3d 302, 310-11 (1st Cir. 2002) (citing Clorox Co. P.R. v. Proctor & Gamble Commercial Co., 228 F.3d 24, 33 n.6 (1st Cir. 2000)); see also 15 U.S.C. § 1125(a).

---

56(e). Accordingly, the Court will not consider the infomercials for purposes of SharkNinja's summary judgment motion and will limit its discussion to the claims made on the Rocket product packaging.

**B.  Summary judgment standard**

Summary judgment is appropriate where the moving party can show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A]n issue is 'genuine' if it 'may reasonably be resolved in favor of either party.'" Robinson v. Cook, 863 F. Supp. 2d 49, 60 (D. Mass. 2012) (quoting Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008)). "A fact is material if its resolution might affect the outcome of the case under the controlling law." Cochran v. Quest Software, Inc., 328 F.3d 1, 6 (1st Cir. 2003) (citation omitted). Thus, "[a] genuine issue exists as to such a fact if there is evidence from which a reasonable trier could decide the fact either way." Id. (citation omitted).

By invoking summary judgment, "the moving party in effect declares that the evidence is insufficient to support the nonmoving party's case." United States v. One Parcel of Real Prop. (Great Harbor Neck, New Shoreham, R.I.), 960 F.2d 200, 204 (1st Cir. 1992) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). "To succeed in showing that there is no genuine dispute of material fact," the moving party must "'affirmatively produce evidence that negates an essential element of the non-moving party's claim,' or, using 'evidentiary materials already on file . . . demonstrate that the non-moving party will be unable to carry its burden of persuasion at trial.'" Ocasio-Hernández v. Fortuño-Burset, 777 F.3d 1, 4-5 (1st Cir. 2015) (quoting Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000)).

Conversely, "to defeat a properly supported motion for summary judgment, the nonmoving party must establish a trial-worthy issue by presenting enough competent evidence to enable a finding favorable to the nonmoving party." ATC Realty, LLC v. Town of Kingston, N.H., 303 F.3d 91, 94 (1st Cir. 2002) (internal quotations and citation omitted). That is, the non-moving party must set forth specific, material facts showing that there is a genuine disagreement

as to some material fact. One Parcel of Real Prop., 960 F.2d at 204 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-57 (1986)).

In reviewing the record, the Court "must take the evidence in the light most flattering to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Cochran, 328 F.3d at 6 (citation omitted). The First Circuit has noted that this review "is favorable to the nonmoving party, but it does not give him a free pass to trial." Hannon v. Beard, 645 F.3d 45, 48 (1st Cir. 2011). "The factual conflicts upon which he relies must be both genuine and material[,]" Gomez v. Stop & Shop Supermarket Co., 670 F.3d 395, 396-97 (1st Cir. 2012), and the court may discount "conclusory allegations, improbable inferences, and unsupported speculation." Cochran, 328 F.3d at 6 (quoting Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)).

## III.   ANALYSIS

### A.  Twice the Suction

SharkNinja moves for partial summary judgment on Count I of its Amended Complaint – *i.e.*, its claim for false advertising under the Lanham Act, 15 U.S.C. § 1125(a).[4] SharkNinja contends that (1) it is undisputed that Dyson's TTS claim became literally false upon the launch of the Shark Lift-Away on July 8, 2014; and (2) this undisputed fact means that SharkNinja is entitled to judgment as a matter of law on its Lanham Act claim, at least as to the question of Dyson's liability. Shark Ninja has not moved for summary judgment as to its alleged damages on Count I, which will need to be proven at trial.

---

[4] Although SharkNinja has also moved for summary judgment on Count II, which alleges unfair trade practices in violation of Mass. Gen. Laws ch. 93A, SharkNinja has not adequately explained why judgment on its Lanham Act claim in Count I would automatically entitle it to judgment on its Chapter 93A claim. Therefore, the Court declines to enter summary judgment on Count II at this time. If appropriate, SharkNinja may submit additional briefing, either before or after trial, explaining why it is entitled to judgment as a matter of law on its state-law claims.

Dyson has cross-moved for summary judgment on Count I. First, Dyson argues there is no basis for liability under the Lanham Act if an advertiser uses "commercially reasonable efforts" to remove advertising claims from the marketplace once those claims become "stale." Dyson contends that the undisputed facts show that it took prompt, commercially reasonable efforts to remove the TTS claim from the market within a matter of months, and that it is therefore entitled to judgment as a matter of law on Count I of SharkNinja's Amended Complaint.

The Court does not find Dyson's argument regarding "commercially reasonable efforts" to be persuasive. It is well-settled that "a showing of intent or lack of good faith on the part of the defendant is not necessary to make out a claim under the Lanham Act." Camel Hair & Cashmere Inst. of Am., Inc. v. Associated Dry Goods Corp., 799 F.2d 6, 13 (1st Cir. 1986); accord Vector Prods., Inc. v. Hartford Fire Ins. Co., 397 F.3d 1316, 1319 (11th Cir. 2005) ("[N]o proof of intent or willfulness is required to establish a violation of Lanham Act § 43(a) for false advertising."); AMCO Ins. Co. v. Inspired Techs., Inc., 648 F.3d 875, 882 (8th Cir. 2011) (same); Procter & Gamble Co. v. Chesebrough-Pond's Inc., 747 F.2d 114, 119 (2d Cir. 1984) (same);  Riverdale Mills Corp. v. Cavatorta N. Am., Inc., 146 F. Supp. 3d 356, 361 (D. Mass. 2015) ("Intent to deceive is not a prima facie element of a false advertising claim under the Lanham Act."). Accordingly, several courts have observed that the Lanham Act "has created a regime of strict liability with regard to false advertising claims." Spotless Enters., Inc. v. Carlisle Plastics, Inc., 56 F. Supp. 2d 274, 278 (E.D.N.Y. 1999); accord Vector Prods., Inc., 397 F.3d at 1319.

In an attempt to avoid this strict liability regime, Dyson argues that courts routinely take a "reasonableness approach" that allows the offending advertiser a reasonable period of time to

remove false claims from the market. [ECF No. 170, pp. 10-11]. Nearly all of the cases Dyson cites in support, however, discuss defendants' compliance with court-issued injunctions. See Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co., 571 F.3d 873, 879 (9th Cir. 2009); Hewlett-Packard Co. v. Nu-Kote Int'l, Inc., No. CIV.A.C94-20647, 2000 WL 33992123, at *2 (N.D. Cal. Feb. 14, 2000); FTC v. Chembio Diagnostic Sys., Inc., No. 00CV0081BTM, 2001 WL 34129746, at *5 (E.D.N.Y. Jan. 16, 2001); Schick Mfg., Inc. v. Gillette Co., No. 3:05-cv-00174, ECF No. 141 (D. Conn. Sept. 21, 2005). These cases do not stand for the proposition that a manufacturer may avoid liability or damages for false advertising under the Lanham Act if, after learning that its advertising is false, it takes prompt, commercially reasonable efforts to remove its false claims from the marketplace.

Furthermore, Dyson's proposed interpretation of the Lanham Act is at odds with the text of the statute itself. Section 43(a) provides in relevant part that:

> [a]ny person who, on or in connection with any goods or services, or any container for goods, uses in commerce any . . . false or misleading description of fact, or false or misleading representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, **shall be liable** in a civil action by any person who believes that he or she is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1) (emphasis added). The language of the statute is compulsory, and it includes no exceptions for cases in which a manufacturer undertakes good faith, commercially reasonable efforts to remove a false claim from the marketplace upon learning of its falsity. Good faith is simply not a defense to a false advertising claim under the Lanham Act. See Lyons P'ship,

L.P. v. D & L Amusement & Entm't, Inc., 702 F. Supp. 2d 104, 113 (E.D.N.Y. 2010); Spotless

Enters., 56 F. Supp. 2d at 278.[5]

Thus, the case law and the statute seem to appropriately establish that an advertiser that

puts a claim into the marketplace bears all of the risk of the claim being false or becoming stale.

An approach that allowed such an advertiser to continue to benefit from false or stale claims, so

long as reasonably commercial efforts were undertaken to remove the advertising, would not

adequately disincentivize the behavior prohibited by the Lanham Act or foster vigilance about the

accuracy of advertising claims. Further, it would unfairly shift the cost of stale or inaccurate claims

from the sponsor of such claims to its competitors, as long as the sponsor made reasonable efforts

to remove those claims. Therefore, the Court rejects Dyson's proposed interpretation of Section

43(a), as it is not supported by either the text of the statute or the relevant case law, and because it

does not reflect sound policy.[6] As a result, Dyson's Motion for Summary Judgment on

SharkNinja's Lanham Act claim is denied.

---

[5] This conclusion is further supported by the history of the Lanham Act. As courts and commentators have noted, "[i]t was one of the purposes of the drafters of the Lanham Act that § 43(a) remove the requirement of willfulness and intent to deceive contained in the predecessor 1920 Act." 5 McCarthy on Trademarks and Unfair Competition § 27:51 (4th ed.); see also Parkway Baking Co. v. Freihofer Baking Co., 255 F.2d 641, 648 n.7 (3d Cir. 1958).

[6] In light of this ruling, the Court declines to address Dyson's alternative argument that SharkNinja is "estopped" from arguing that Dyson's removal efforts were unreasonable, based on positions SharkNinja has taken in other, unrelated false advertising litigations. [ECF No. 223, pp. 11-14]. Whether or not Dyson acted reasonably promptly in removing its false TTS claim from the market is not relevant to Dyson's liability for false advertising under Section 43 of the Lanham Act. The Court also rejects Dyson's argument that SharkNinja's Lanham Act claim is barred by the doctrine of "unclean hands," based on SharkNinja's allegedly illegal conduct relating to its advertising for the Shark Rocket. [ECF No. 223, pp. 14-17]. This issue cannot be decided as a matter of law at this point in time, as the facts surrounding this purported defense are hotly disputed. Further, Dyson has not established a sufficient "nexus" between the TTS claim and SharkNinja's own comparison claims regarding its Rocket vacuum. Accordingly, Dyson's motion for summary judgment is DENIED as to these points.

Further, given that Dyson's "commercially reasonable efforts" are not a defense, and in light of Dyson's admission that the TTS claim became literally false no later than July 8, 2014, SharkNinja is entitled to partial summary judgment on the Lanham Act claim alleged in Count I. SharkNinja has established, as a matter of law, that Dyson's TTS claim was "material" – or, in other words, "likely to influence the purchasing decision." Clorox, 228 F.3d at 33. Because the TTS claim focused on suction, which is an "inherent quality or characteristic" of vacuum cleaners, materiality is presumed. See Saks Fifth Ave., 284 F.3d at 311-12. Likewise, when an advertising claim is literally false, it is presumed that the claim actually deceived, or has a tendency to deceive a substantial segment of its audience. In such cases, the court may grant relief "without considering evidence of consumer reaction." Clorox, 228 F.3d at 33. Finally, Dyson does not dispute that it placed the TTS claim into interstate commerce. Accordingly, SharkNinja is entitled to judgment as a matter of law on the issue of liability. Dyson is liable for any damages proximately caused by its false TTS advertising claims appearing after July 8, 2014, assuming that SharkNinja proves such causation and damages at trial.

Dyson, perhaps in anticipation of this ruling, has also moved for summary judgment on a subsidiary issue – namely, whether Dyson's false advertising was "willful and knowing." See Compl. ¶¶ 45-55. Although no proof of intent or willfulness is required to establish liability under Section 43 of the Lanham Act, see Vector Prods., Inc., 397 F.3d at 1319, a finding that the defendant acted knowingly and willfully may, in some cases, support an award of enhanced damages, disgorgement of profits, and/or attorneys' fees. See 15 U.S.C. § 1117(a);[7] Fishman Transducers, Inc. v. Paul, 684 F.3d 187, 191 (1st Cir. 2012) (noting that a finding of willfulness

---

[7] Section 1117(a) provides that "in assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount," and that in "exceptional cases," the court may award reasonable attorney fees to the prevailing party. 15 U.S.C. § 1117(a).

is typically required to award multiple damages, or a recovery of the defendant's profits); <u>Merck Eprova AG v. Gnosis S.p.A.</u>, 760 F.3d 247, 261 (2d Cir. 2014) (affirming district court's award of defendant's profits, where defendant's false advertising was willful, and award of profits was "necessary to deter future unlawful conduct, prevent [defendant's] unjust enrichment, and compensate [plaintiff] for the business it lost as a result of the false advertising").

Although it is the Court that ultimately decides whether to award profits, enhanced damages, and/or attorney's fees under 15 U.S.C. § 1117(a), this decision must be informed by subsidiary factual findings, including a finding on willfulness. In the context of civil claims under the Lanham Act, "willfulness requires a conscious awareness of wrongdoing by the defendant or at least conduct deemed 'objectively reckless' [when] measured against standards of reasonable behavior." <u>Fishman Transducers</u>, 684 F.3d at 191. Here, there are abundant factual disputes bearing on whether Dyson acted knowingly and willfully. Dyson is therefore not entitled to judgment as a matter of law on the issue of willfulness, and its motion for summary judgment as to willfulness is <u>DENIED</u>. If warranted, the Court may ask the jury to make factual findings on these points, to assist the Court in determining any damages award. <u>See</u> <u>id.</u>

**B.  The Rocket "deep cleans carpets better than a full-size Dyson"**

SharkNinja has also moved for summary judgment on Dyson's Lanham Act counterclaim, on the grounds that there is no evidence that the Shark Rocket advertising was false or misleading, as required to prevail on a false advertising claim under Section 43(a) of the Lanham Act. <u>See</u> <u>Saks Fifth Ave.</u>, 284 F.3d at 310-11.

A party can prove the falsity element of a false advertising claim in two ways—first, by proving that the defendant's advertisement is literally false, or second, by proving that the advertisement is "implicitly false—that is, the advertisement is true or ambiguous yet

misleading." Id. at 311. "Where the advertisement is literally false, a violation may be established without evidence of consumer deception." Id. "Where the advertisement is implicitly false, however, 'an additional burden is placed upon the plaintiff to show that the advertisement . . . conveys a misleading message to the viewing public.'" Id. (quoting Clorox, 228 F.3d at 33).

In its counterclaims, Dyson alleges that the claim that the Shark Rocket "cleans carpets better than a full-sized Dyson*" is both literally and impliedly false. First, Dyson asserts that the claim is literally false because the claim necessarily communicates to consumers that the Rocket can outperform *every* full-size Dyson upright vacuum. According to Dyson, the footnote on the package (identifying the DC40 as the relevant Dyson vacuum) is without any effect, because the footnote's size and placement on the box made it virtually impossible for consumers to read. Alternatively, Dyson argues that it can prove SharkNinja's claims were at least implicitly false, because it has ample survey evidence that consumers were, in fact, deceived by these claims.

SharkNinja argues that it is entitled to summary judgment on Dyson's counterclaims, because (1) the claims were literally true, and (2) Dyson cannot establish implied falsity, as its survey evidence is fatally flawed. The Court is not persuaded by either of these arguments.

First, "[w]hether an advertisement is literally false is typically an issue of fact." Clorox, 228 F.3d at 34. The First Circuit has noted that:

> [a]t least two factual questions must be answered in evaluating the accuracy of any particular advertisement. First, a factfinder must determine the claim conveyed by the advertisement. Once the claim made by the advertisement has been determined, the factfinder must then evaluate whether that claim is false.

Id. (internal citations omitted). Here, there is a threshold factual dispute about what message was actually communicated by the promotional claim that the Shark Rocket "cleans carpets better than a full-sized Dyson*". SharkNinja contends that the footnote disclaimer is an integral part of the claim, and that the claim is literally true because the Shark Rocket did, in fact, clean carpets better

than the DC40. SharkNinja further argues that even if the footnote is disregarded, the claim remains literally true because the Shark Rocket did clean carpets better than "a" full-sized Dyson upright (namely, the DC40). SharkNinja notes that it did not expressly claim that the Shark Rocket cleans carpets better than *every* full-sized Dyson vacuum. Dyson, in contrast, argues that the footnote disclaimer is entirely ineffective, and that when considered in context, the claim actually communicates that the Shark Rocket cleans carpets better than *every* full-sized Dyson. The Court cannot resolve this dispute on summary judgment, because what message the claim actually communicates or necessarily implies is a factual dispute best resolved by a jury. Accordingly, SharkNinja is not entitled to judgment as a matter of law on the issue of literal falsity.

Next, SharkNinja argues that Dyson cannot prove implied falsity, because the survey evidence on which Dyson relies is "inherently flawed." When a Lanham Act claim is based on a theory of implied falsity, the plaintiff "has the burden of proving that a substantial portion of the audience for that advertisement was actually misled." Clorox, 228 F.3d at 36. "An advertisement's propensity to deceive the viewing public is most often proven by consumer survey data." Id.

Here, Dyson retained a consultant (Dr. Ran Kivetz) to design, implement, and analyze the results of a consumer perception survey relating to the Shark Rocket advertisement at issue. Dyson intends to present Dr. Kivetz's report on that survey as expert opinion testimony in this case. SharkNinja appears to have retained its own survey expert, Joel Cohen, who authored a rebuttal report identifying several alleged flaws in Dr. Kivetz' survey. Although some of SharkNinja's criticisms of the Kivetz survey may be well-founded, these purported flaws go to the weight, and not the admissibility, of the proffered expert testimony. See POM Wonderful LLC v. Organic Juice USA, Inc., 769 F. Supp. 2d 188, 200 (S.D.N.Y. 2011); Merisant Co. v. McNeil Nutritionals, LLC, 242 F.R.D. 315, 324 (E.D. Pa. 2007). The Court does not find that the Kivetz survey is so flawed

or unreliable that this evidence should be excluded at trial. Because the Kivetz survey is admissible, and because it provides some evidence of consumer deception, SharkNinja's motion for summary judgment is denied as to the issue of implied falsity.[8]

## IV.    CONCLUSION

For the foregoing reasons, SharkNinja's Motion for Summary Judgment [ECF No. 171] is <u>ALLOWED</u> with regard to the issue of Dyson's liability on Count I of the Amended Complaint. SharkNinja's Motion is otherwise <u>DENIED</u>. Dyson's Motion for Summary Judgment [ECF No. 169] is also <u>DENIED</u>.

**SO ORDERED.**

Dated: August 3, 2016

<u>/s/ Allison D. Burroughs</u>
ALLISON D. BURROUGHS
DISTRICT JUDGE

---

[8] SharkNinja also argues that Dyson cannot establish that the "cleans carpets better than a full size Dyson" claim was material to consumers. The Court disagrees. Because the advertising claim focuses on the Rocket's cleaning ability, which is an "inherent quality or characteristic" of vacuum cleaners, materiality is presumed. See <u>Saks Fifth Ave.</u>, 284 F.3d at 311-12.