UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SHARKNINJA OPERATING LLC, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | *  No: 14-cv-13720-ADB |
| | * |
| DYSON INC. and DYSON LTD., | * |
| | * |
| Defendants. | * |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

The parties, SharkNinja Operating LLC ("SharkNinja"), and Dyson Inc. and Dyson LTD (together, "Dyson"), are competitors in the household vacuum market. In this action, each accuses the other of disseminating false and misleading advertising about their respective vacuum products, in violation of the federal Lanham Act, 15 U.S.C. § 1125(a), and Massachusetts state law. Dyson has moved to strike SharkNinja's jury demand [ECF No. 432], and SharkNinja has opposed it [ECF No. 435]. For the reasons set forth in this Memorandum and Order, Dyson's Motion to Strike SharkNinja's Jury Demand [ECF No. 432] is <u>DENIED</u> without prejudice.

  I.   **Background**

On June 9, 2016, SharkNinja filed a covenant not to sue Dyson for impliedly false advertising with regard to Dyson's "Twice the suction of any other vacuum" ("TTS") advertising claim. [ECF No. 328 at 3]. On August 3, 2016, this Court held that Dyson was liable under the Lanham Act because its TTS advertising claim was literally false as of July 8, 2014. [ECF No. 396]. The parties have each filed pre-trial memoranda [ECF Nos. 353, 356], proposed jury

instructions [ECF Nos. 421, 426-2, 426-3], proposed voir dire questions, [ECF No. 423, 426-1], and proposed jury verdict forms [ECF Nos. 422, 426-4].

On the eve of trial, Dyson has moved to strike SharkNinja's jury demand, arguing that all issues remaining in the case are equitable, and that there are therefore no issues remaining that carry a right to a jury trial. [ECF No. 432]. SharkNinja, in opposition, argues that it is seeking an accounting of Dyson's profits as a proxy for harm it has suffered, and that it is entitled to a jury trial on that issue. [ECF No. 435]. Specifically, SharkNinja argues that "[b]ecause SharkNinja and Dyson are direct competitors, and Dyson engaged in false comparative advertising of directly competing products, SharkNinja's request for an accounting is justified as a rough measure of harm suffered by SharkNinja as a result of Dyson's unlawful conduct." [ECF No. 435 at 1]. In its brief opposing Dyson's motion to strike, SharkNinja lists several cases, including four First Circuit cases, in support of the proposition that "[i]n circumstances such as those presented in this case, in which the plaintiff and the defendant are direct competitors, the First Circuit and other courts recognize that a plaintiff seeking an accounting of the profits pursuant to 15 U.S.C. § 1117(a) is pursuing a claim under" the proxy rationale. [ECF No. 435 at 9–10].

**II.     Legal Framework**

Parties in a civil case have a right to a jury trial for a federal claim or defense only under the Seventh Amendment or as provided by statute. See Feltner v. Columbia Pictures Television, Inc., 523 U.S. 340, 347 (1998). The First Circuit has recognized that the Lanham Act itself does not create a statutory right to a jury trial whenever a party requests an accounting of profits. See Visible Sys. Corp. v. Unisys Corp., 551 F.3d 65, 78 (1st Cir. 2008) ("it seems clear that the Lanham Act itself does not create a right to a jury trial whenever the remedy of an accounting of defendant's profits is sought"). Neither the Supreme Court nor the First Circuit has resolved the

question of whether a party seeking an accounting of profits under the Lanham Act has a Seventh Amendment jury trial right. See id. at 80 & n.11. Other courts have disagreed on the issue. See Black & Decker Corp. v. Positec USA Inc., 118 F. Supp. 3d 1056, 1062 (N.D. Ill. 2015) (discussing disagreement among courts). In cases where the remedy sought is solely equitable, it is well recognized that parties generally do not have a jury trial right. 9 Wright & Miller, Fed. Prac. & Proc. Civ. § 2302 (3d ed. 2016). Whether a Seventh Amendment jury trial right exists is a two-part test that involves, first, "compar[ing] the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity;" and, second, determining "whether [the remedy sought] is legal or equitable in nature." Frappier v. Countrywide Home Loans, Inc., 750 F.3d 91, 98 (1st Cir. 2014) (quoting Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry, 494 U.S. 558, 565 (1990)), cert. denied, 135 S. Ct. 179 (2014). An accounting of profits is generally described as an equitable remedy. Visible Sys., 551 F.3d at 78.

There are, however, certain situations where such an accounting can implicate legal issues which require a jury trial. See Dairy Queen, Inc. v. Wood, 369 U.S. 469, 477 (1962) (right to jury trial where request for accounting was "wholly legal in its nature"); see also Visible Sys., 551 F.3d at 78. One such situation is when a request for an accounting of profits is actually a proxy for legal damages. See Visible Sys., 551 F.3d at 80. While the First Circuit has not definitively held that an accounting of profits, when it is a proxy for legal damages, creates a right to a jury trial, it has recognized that "this proxy rationale may well present the strongest argument under the Seventh Amendment." See id. at n.11. Other courts have determined that the proxy rationale creates a jury trial right. See, e.g., Black & Decker, 118 F. Supp. 3d at 1062, 1064 (finding jury trial right and discussing cases on the issue). Apart from the proxy rationale,

SharkNinja has not provided any other theory under which an accounting of profits would be a legal, rather than equitable, issue or otherwise require a jury determination.

The First Circuit has warned "that a plaintiff's characterization of why it is seeking an accounting" does not necessarily control in determining whether the claim for accounting of profits creates a jury trial right. Visible Sys., 551 F.3d at n.11 (citing cases discussing manipulation of jury trial right). A plaintiff may receive an award for damages based on the defendant's profits only if the plaintiff shows "that the products directly compete, such that defendant's profits would have gone to plaintiff if there was no violation." See Bern Unlimited, Inc. v. Burton Corp., 95 F. Supp. 3d 184, 217–18 (D. Mass 2015) (quoting HipSaver Co., Inc. v. J.T. Posey Co., 497 F. Supp. 2d 96, 106 (D. Mass. 2007)). In Fishman Transducers, Inc. v. Paul, the First Circuit explained that

> [u]nder th[e] direct competition theory [for damages based on defendant's profits], the plaintiff and defendant products may be such complete substitutes that a sale by the infringer under the infringed party's mark is almost automatically a lost sale by the plaintiff, so the issue of causation almost vanishes from the case.
>
> *And*, if the two companies are in the same line of business, defendant's profits may be presumptively similar to what plaintiff would have earned on the sale. Congress has further provided that where profits are the measure of recovery, the plaintiff need only prove the defendant's sales and the defendant must prove costs and other deductions.

684 F.3d 187, 196 (1st Cir. 2012) (citing 15 U.S.C. § 1117(a) and Tamko Roofing Products, Inc. v. Ideal Roofing Co., Ltd., 282 F.3d 23, 37 (1st Cir. 2002)) (emphasis added). The Fishman Court further added that direct competition, as a justification for accounting, requires "a substantial degree of equivalence and substitutability" of the products such that a "plausible one-to-one equivalent exists" regarding "the number of sales diverted or the profits transferred." See id. While it is sound logic that direct competition can support the inferences described in

Fishman in a two-person market, as the Bern Court explained, "[t]he presumption of causation and injury" is "substantially undermined, if not negated altogether" in a multiple competitor market. See Bern Unlimited, Inc. v. Burton Corp., 95 F. Supp. 3d 184, 218 (D. Mass. 2015).

Furthermore, the proxy rationale for a defendant's profits is not available where there is an adequate remedy at law. The First Circuit in Visible Systems rejected the proxy rationale for an accounting in part because a jury could and did measure the harm to the plaintiff as a result of the infringement, and the court noted that "[t]he necessary prerequisite to the right to maintain a suit for an equitable accounting . . . [is] the absence of an adequate remedy at law." Visible Sys., 551 F.3d at 80 (quoting Dairy Queen, 369 U.S. at 478).

### III.   Discussion

Before reaching the constitutional question, the Court will first address the threshold question of whether an accounting of Dyson's profits can be justified as a proxy for legal damages. See Visible Sys., 551 F.3d at 79–80 (avoiding the Seventh Amendment issue and deciding that evidence was not sufficient to support the proxy rationale). A proxy theory of damages is not viable in every case. See, e.g., id. at 80 ("The proxy rationale has no place in this case on the evidence."); Fishman, 684 F.3d at 196 (rejecting damages based on proxy rationale because "while HSN's violations *could* damage Fishman sales, no plausible one-to-one equivalent exists here as the number of sales diverted or the profits transferred"); Black & Decker, 118 F. Supp. 3d at 1063 ("assuming that their theory of profits as a proxy for damages has evidentiary support"). In fact, some courts have rejected a plaintiff's characterization of its request for profits as a proxy for damages. See, e.g., Juicy Couture, Inc. v. L'Oreal, USA, Inc., No. 04-7203, 2006 WL 559675, at *1 (S.D.N.Y. Mar. 7, 2006).

SharkNinja's representations in its opposition to the motion to strike and elsewhere seem to be in tension with each other in terms of whether it seeks an accounting of profits as a measure of harm suffered. In its amended complaint, SharkNinja requested "actual monetary damages according to proof," and then separately requested "an accounting of Dyson's profits resulting from its Lanham Act violations and a disgorgement of those profits in an amount to be proven at trial." [ECF No. 40 at 30]. Subsequently, SharkNinja's own expert withdrew his opinion regarding SharkNinja's lost profits, which SharkNinja never addressed in its opposition to the motion to strike. Additionally, SharkNinja dropped its claim for corrective advertising damages. [ECF No. 417]. In its pre-trial memorandum, SharkNinja listed what it believed to be the "only contested issues of fact to be tried and decided;" it included "[t]he amount of Dyson's profits that should be disgorged based on its use of a [sic] admittedly literally false advertising claim," but did not indicate in any way that Dyson's profits provided a measure of the harm SharkNinja suffered as a result of the false advertising. [ECF No. 356 at 4–5]. Based in part on such statements, Dyson argues that SharkNinja has abandoned any theory of compensatory damages and seeks only the equitable remedy of disgorgement of profits. [ECF No. 432 at 2–5]. After reviewing SharkNinja's supposed admissions, however, the Court finds that SharkNinja's statements need not be so narrowly construed and do not necessarily forfeit a claim of compensatory damages; however, SharkNinja's unclear representations do raise questions about the legitimacy of its proxy rationale.

SharkNinja justifies its proxy rationale for profits as damages on a theory of direct competition. SharkNinja, however, has not sufficiently supported its argument to establish a viable proxy rationale. To support the proposition that "SharkNinja and Dyson are direct competitors in the household vacuum market," SharkNinja, in its opposition to Dyson's Motion

to Strike, cites to the first page of this Court's Summary Judgment Order [ECF No. 396]. [ECF No. 435 at 8]. The citation given fails to support the proposition made: nowhere on the first page did the Court find that the parties are "direct competitors," and certainly not in the more particular sense outlined in Fishman. Nor have the parties, as far as this Court knows, stipulated to anything more than the fact that they are competitors in the same market, along with other manufacturers. See [ECF No. 354]. SharkNinja relies heavily on Black & Decker Corp. v. Positec USA Inc., 118 F. Supp. 3d 1056 (N.D. Ill. 2015), in arguing that its proxy rationale creates a jury trial right. See [ECF No. 435 at 7]. Unlike here, however, the Black & Decker Court was presented with evidence suggesting actual loss, including a declaration by the director of branch marketing and a confusion survey that indicated actual confusion, and the court reasoned that "actual loss supports a theory of profits as a proxy for damages." See Black & Decker, 118 F. Supp. 3d at 1067. The Black & Decker Court considered the evidence presented and reasoned that

> [t]aken together, Plaintiffs' evidence suggests that (1) the parties are direct competitors; (2) their products lay side-by-side in the same retail stores; and (3) a substantial percentage of customers may be confused as to the source of the parties' products. With that evidence, Plaintiffs may be able to convince a trier of fact that, by infringing Plaintiffs' trademark-related rights, Defendants caused consumers to purchase Defendants' products instead of Plaintiffs'. Accordingly, Plaintiffs appear to have a viable theory that profits serve as a proxy for damages.

Black & Decker, 118 F. Supp. 3d at 1067. Thus, the evidence in Black & Decker suggested that "the defendants' gain correlated with the plaintiffs' loss." See id. at 1068. Here, SharkNinja has not yet presented evidence sufficient to support a comparable suggestion. Moreover, even where the Black & Decker Court found a viable proxy theory and a jury trial right, it reserved the right to treat the jury's determinations as advisory or disregard them altogether if "(1) Plaintiffs'

evidence at trial f[ell] short of making a plausible claim under the 'profits as a proxy for damages' model," or "(2) the Court bec[ame] convinced upon further reflection that there is no right to a jury trial in this case." Id. at n.17.

At this stage, the Court finds that SharkNinja has not presented sufficient evidence to support a viable theory of proxy damages. Given the evidence of multiple competitors in the same market and the scant support in their summary judgment briefs, this Court is not able to infer that, simply because the parties were competitors, they were "direct competitors" in the sense the Fishman Court used the phrase, such that SharkNinja could show that Dyson's profits reflect "almost automatically a lost sale by the plaintiff." See Fishman, 684 F.3d at 196. Given the uncertainty as to whether SharkNinja's request for an accounting of Dyson's profits can be a proxy for its legal damages, the Court will delay making a constitutional ruling at this time. Instead, SharkNinja may present evidence to establish that Dyson's profits can be a proxy for its legal damages. The Court will revisit the constitutional question as appropriate following such a showing. Accordingly, the Court will hold a jury trial and determine at a later time whether the jury verdict will be advisory. See, e.g., Attrezzi, LLC v. Maytag Corp., 436 F.3d 32, 36 (1st Cir. 2006) (where district court denied motion to strike jury demand, "reserving the question until 'after the case has been completed,' at which point, '[i]f [the court] determine[s] that plaintiff does not have a right to a jury trial, [it] w[ould] treat the jury's verdict as advisory pursuant to Fed. R. Civ. P. 39(c).'").

### IV. Conclusion

For the foregoing reasons, Defendant's Motion to Strike SharkNinja's Jury Demand [ECF No. 432] is <u>DENIED</u> without prejudice.

**SO ORDERED.**

Dated: October 19, 2016

                                                 <u>/s/ Allison D. Burroughs</u>
                                                 ALLISON D. BURROUGHS
                                                 DISTRICT JUDGE